JUDGE FURMAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------
ACTION FRONT UNLIMITED, INC.,                   :

                              Plaintiff,        :        **12 CV 5483**

                                                :        Civil Action No.

        -against-                               :        **COMPLAINT**

EDWARD KOWALCZYK,                               :        Jury Trial Demanded

                              Defendant.        :

-------------------------------------------------------------------x

        Plaintiff Action Front Unlimited, Inc. ("Plaintiff"), by and through its undersigned

attorneys, as and for its Complaint against Defendant Edward Kowalczyk ("Kowalczyk" or

"Defendant"), alleges with personal knowledge as to its own acts and upon information and

belief as to the acts of others, as follows:

<u>STATEMENT OF THE CASE</u>

        1.      Plaintiff is a corporation which furnishes the services of the popular and highly

successful rock band named "LIVE."  Plaintiff owns numerous federally registered trademarks in

the name "LIVE" (hereafter, the "LIVE Marks").  Since 1991, tens of millions of albums,

hundreds of thousands of concert tickets, and related merchandise such as T-shirts and posters

have all been promoted and sold under the LIVE Marks pursuant to Plaintiff's license and

authorization.

        2.      Plaintiff brings this action to seek redress for the continuing willful infringements

of the LIVE Marks by the former lead singer of LIVE, Defendant Kowalczyk.  Plaintiff seeks a

permanent injunction, damages, and attorney's fees from Kowalczyk for his improper efforts to

confuse consumers and wrongfully profit from Plaintiff's goodwill in the LIVE Marks.

3.      Specifically, Kowalczyk is advertising and otherwise promoting his musical performances at venues nationwide under the infringing name and mark "ED KOWALCZYK OF LIVE" (and/or similar names and marks).  By virtue of this conduct, Defendant seeks to mislead both concert promoters and the general public into wrongly believing that his musical performances are affiliated with, or indeed feature, the band LIVE.

4.      Pointedly, the website of Kowalczyk's booking agent, the Paradigm Talent Agency, sets forth Kowalczyk's **name** on its "Artist Roster" as "ED KOWALCZYK OF LIVE." The word "LIVE" is displayed in Defendant's infringing name and mark on the Paradigm website and in other promotional materials for Defendant's performances in the same font size, typeface and color as the words "ED KOWALCZYK".  Importantly, these promotional materials do not contain any disclaimer language that would make clear to consumers that Defendant is no longer a member of LIVE and no longer has any affiliation with that band.

5.      Kowalczyk's unlawful use of the infringing name and mark "ED KOWALCZYK OF LIVE" has caused and is causing consumers to be deceived into believing that Plaintiff is associated with Defendant's solo musical performances, and that these performances derive from the same source or sponsor as Plaintiff or are otherwise endorsed by the Plaintiff.  Unless these acts of infringement are enjoined, they will continue to cause irreparable harm to the hard-earned and invaluable reputation and goodwill of Plaintiff and the LIVE Marks.

## PARTIES

6.      Plaintiff Action Front Unlimited, Inc. is a corporation organized and existing under the laws of Maryland.  Action Front Unlimited, Inc. furnishes the services of the enormously successful rock band known as "LIVE".

2

7.      Defendant Edward Kowalczyk ("Kowalczyk") is a professional musician and songwriter, and a citizen of the State of California.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121(a) as this action arises under the United States trademark laws, and under 28 U.S.C. § 1367 with respect to the pendant state law claims.

9.      This Court has personal jurisdiction over Defendant pursuant to New York Civil Practice Law and Rules §§ 301 and 302 because he is doing business in the State of New York, has engaged in acts in violation of Plaintiff's rights in the State of New York, and has been and is causing injury to Plaintiff in the State of New York.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in this judicial district.

## STATEMENT OF FACTS

**A.      Plaintiff's Development of the LIVE Marks**

11.     Nonparties Patrick Dahlheimer ("Dahlheimer"), Chad Gracey ("Gracey"), Chad Taylor ("Taylor") and Defendant Kowalczyk (hereafter collectively, the "Band Members") grew up together in the small town of York, Pennsylvania in the 1980s. While they were still in school, these four friends began playing together as a rock group under the name "Public Affection." In the late 1980s, the Band Members obtained a devoted fan base throughout the East Coast thanks to their well-attended live performances and popular, self-distributed recordings.

12.     In or about 1989, the Band Members formed a company, Plaintiff Action Front Unlimited, Inc., to furnish their services as a rock band. At all times since its

3

incorporation, each of the four Band Members has been a 25% shareholder and director of the Plaintiff. Taylor has served as the president of Plaintiff at all times.

13.     In or about October of 1989, each of the four Band Members, including Kowalczyk, signed his own Employment Agreement with the Plaintiff. Pursuant to the terms of these Employment Agreements, each of the Band Members, including Kowalczyk, agreed to render to Plaintiff "all services . . . usually and customarily rendered by and required of persons in . . . fields of the entertainment industry" and granted to Plaintiff all intellectual property rights in all "results and proceeds" of that Band Member's services under the Employment Agreement, including but not limited to trademark rights.

14.     In or about 1991, the Band Members changed the name of their band from "Public Affection" to "LIVE," and under the terms of their Employment Agreements thereby assigned all trademark rights in the name "LIVE" to the Plaintiff. At all material times, Kowalczyk has known that these trademark rights in the name "LIVE" are solely owned by the Plaintiff, and that Kowalczyk personally does *not* hold any trademark rights in that name.

15.     In 1991, the Plaintiff signed a recording agreement with Radioactive Records, pursuant to which the Plaintiff furnished the Band Members' services to that label. Between the years 1991 and 2006, seven highly successful albums were released (six on Radioactive Records and one on Epic Records) that featured recordings of the Band Members performing together under the Plaintiff's name and mark "LIVE." These seven albums have sold many millions of copies worldwide, and featured numerous smash hit singles, including "Lakini's Juice", "Lightning Crashes", "Selling The Drama", and "All Over You".

16.     Throughout the past two decades, the Band Members have successfully toured the United States as well as the rest of the world, regularly giving musical performances

to large audiences at stadiums, arenas and other major venues under the name and mark "LIVE" pursuant to license granted by the Plaintiff.

17.     Throughout the past two decades, the Plaintiff has also authorized the sale of t-shirts and other apparel bearing the LIVE brand and name, as well as LIVE posters and other LIVE branded merchandise.  This merchandise has been sold and distributed at LIVE musical performances and elsewhere.

18.     Additionally, Plaintiff has endeavored over the years to ensure that the LIVE brand has an active presence on the Internet.  In the mid-1990s, Plaintiff acquired the <friendsoflive.com> domain name and has operated a website at this Internet address since at least as early as 1998.  Plaintiff also currently operates a website at the Internet address <freaks4live.com>.  The LIVE brand is prominently featured on these websites and has been so featured at all points in time.

19.     Plaintiff uses its <friendsoflive.com>  and  <freaks4live.com> websites to advertise and promote LIVE CDs and DVDs.  These websites also permits consumers to purchase LIVE branded merchandise such as t-shirts, caps, necklaces, stickers, posters and other related items.

**B.     Plaintiff's Registration of the LIVE Marks**

20.     Plaintiff owns the following United States trademark registrations issued on the Principal Register (collectively, the "LIVE Marks"):

| Mark | Reg. No. | Reg. Date | Goods and Services |
|------|----------|-----------|--------------------|
| LIVE | 2,246,963 | 5/25/1995 | Paper goods and printed matter, namely, posters, decals, bumper stickers, and trading cards. |
| LIVE | 2,119,640 | 12/9/1997 | Entertainment services, namely live performances by a musical group. |

5

| LIVE | 2,116,106 | 11/25/1997 | Clothing, namely T-shirts, sweatshirts, caps, hats, tank tops and jackets. |
| LIVE | 2,119,639 | 12/9/1997 | Phonograph records, compact discs, pre-recorded videotapes containing musical performances, and pre-recorded audiotapes and cassettes containing musical performances. |

21.     In accordance with Sections 7(b), 22 and 33(a) of the Lanham Trademark Act, Plaintiff's above-cited registrations constitute *prima facie* evidence of the validity of such registered marks and of the registrations thereof, Plaintiff's ownership of the marks shown in said registrations, and Plaintiff's exclusive right to use the marks in commerce in connection with the goods and services named therein, without condition or limitation.  The foregoing registrations have each achieved incontestable status pursuant to 15 U.S.C. § 1065.

22.     As set forth above, Plaintiff has devoted, and continues to devote, significant resources toward ensuring the high quality of Plaintiff's products and services displaying the LIVE Marks.

23.     Through its efforts over the past two decades, Plaintiff has established a strong consumer base and is known throughout its market as a provider of high quality entertainment goods, and services.  By virtue of the quality of its products and services, and as a result of its expenditure of considerable sums of money on advertising and promotion, Plaintiff has built up valuable goodwill in the LIVE Marks.  These LIVE Marks are of immeasurable value to Plaintiff.

**C.     Defendant's Infringing Use of the LIVE Marks**

24.     In late 2009, Dahlheimer, Gracey and Taylor – who collectively hold 75% of the shares of Plaintiff – elected to remove Kowalczyk from the band LIVE as a result of certain disagreements between him and the other Band Members.

6

25.     After his departure from the band LIVE, Kowalczyk embarked on a nationwide musical tour of concert venues.

26.     Despite his knowledge of Plaintiff's exclusive rights in the LIVE Marks, Defendant has elected to tour and perform throughout the United States and abroad under the infringing name and mark "ED KOWALCZYK OF LIVE" (and/or similar names and marks). Indeed, the Defendant's name is listed in the "Artist Roster" on the website of his booking agent, the Paradigm Talent Agency, as "ED KOWALCZYK OF LIVE."

27.     In Defendant's infringing mark, the word "LIVE" is displayed with equal prominence – *i.e.,* in the same font size, typeface and color – as the words "ED KOWALCZYK".

28.     Kowalczyk utilizes this infringing name and mark extensively throughout his promotional materials for his musical performances, and has encouraged concert promoters to advertise his shows with this same infringing name and mark.

29.     The promotional materials for Defendant's concert performances do not inform consumers that Kowalczyk is no longer a member of LIVE.  Nor do these materials contain any other language of disclaimer that would inform consumers that Defendant's musical performances are in no way sponsored by or affiliated with the band LIVE.

**D.     Effect of Defendant's Unlawful Use of Plaintiff's Trademarks**

30.     Through his unlawful use of the LIVE Marks, Kowalczyk seeks to cause, has caused, and is causing consumers, including booking agents, theaters, arenas and the press, in addition to the general public, to be deceived into believing that Defendant's musical performances either originate with Plaintiff as the source, or are otherwise sponsored or endorsed by Plaintiff.

7

4732459.2/42993-00001

31.    Defendant's musical performances are sold to the same market of consumers that is the target population of Plaintiff's musical performances and are offered through the same channels of trade.

32.    Plaintiff has no control over the quality of the Defendant's musical performances. As a consequence, the favorable reputation and goodwill that Plaintiff has developed in its valuable LIVE Marks is in jeopardy as a result of Defendant's use of those marks.

33.    Defendant's use of the LIVE Marks has resulted in actual confusion and will certainly continue to result in widespread consumer confusion as to the source, affiliation, connection or association of Defendant's musical performances with Plaintiff.

34.    Plaintiff has suffered and will continue to suffer irreparable harm to its invaluable LIVE Marks as a result of Defendant's use of them in connection with his musical performances.

**COUNT I**
**Trademark Infringement Of Federal**
**Trademarks Pursuant to 15 U.S.C. § 1114(1)**

35.    Plaintiff restates and incorporates by reference the allegations continued in paragraphs 1 through 34 as if fully stated herein.

36.    Plaintiff holds valid federal trademark registrations for the mark LIVE on the Principal Register for paper goods and printed matter, entertainment services, clothing, phonograph records, compact discs, pre-recorded videotapes containing musical performances, and pre-recorded audiotapes and cassettes containing musical performances (collectively, Plaintiff's "LIVE Marks").

37.    Defendant is using the LIVE Marks in connection with the promotion of Defendant's musical performances.

38.    Plaintiff has never authorized Defendant to use the LIVE Marks in connection with Defendant's musical performances or otherwise.

8

39.     Plaintiff has priority over Defendant by virtue of its use of the LIVE Marks prior to Defendant's date of first use of them.

40.     Defendant is using the LIVE Marks to promote the same or similar goods and services offered by Plaintiff in connection with the LIVE Marks.

41.     Consumers are likely to see Defendant's use of the LIVE Marks in connection with Defendant's musical performances as related to, affiliated with, or sponsored by Plaintiff.

42.     Plaintiff has no control over the quality of the services that Defendant provides under the LIVE Marks.  As a consequence, the favorable goodwill that Plaintiff has developed in its valuable LIVE Marks is at risk as a result of Defendant's use of the LIVE Marks to promote Defendant's musical performances.

43.     Defendant advertises his services to the same consumers and sells his services through the same channels of trade as Plaintiff.

44.     Defendant's use of the LIVE Marks has caused actual confusion and is likely to continue to cause confusion, or to cause mistake or to deceive the relevant consuming public as to the source, affiliation, connection or association of Defendant's musical performances with Plaintiff.

45.     Defendant's infringement of Plaintiff's LIVE Marks to cause confusion, mistake and deception has been knowing, willful, intentional and deliberate.

46.     Plaintiff has suffered and will continue to suffer irreparable harm, as a result of Defendant's use of the LIVE Marks for his musical performances.  Unless enjoined by the Court, Defendant will continue to infringe Plaintiff's LIVE Marks and to cause confusion, mistake, and deception, thereby causing immediate and irreparable injury to Plaintiff.

47.     Plaintiff has no adequate remedy at law.

4732459.2/42993-00001

48.     Plaintiff is entitled to an injunction restraining Defendant, his agents and employees, and all persons acting in concert with any one or more of them, from engaging in any of the foregoing acts or any further or different acts in violation of Plaintiff's LIVE Marks under Section 32 of the Lanham Act, 15 U.S.C. § 1114, pursuant to Section 34 of the Act, 15 U.S.C. § 1116.

49.     Plaintiff is entitled to recover statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c), based upon Defendant's unauthorized use of Plaintiff's LIVE Marks.

50.     Plaintiff has suffered damages as a proximate result of Defendant's infringing acts and is entitled to recover Defendant's profits attributable to his acts of infringement, along with treble damages, statutory damages, costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

51.     Plaintiff is entitled to an order requiring the seizure and destruction of all infringing labels, signs, packages, advertisements, negatives or other materials that violate Plaintiff's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1115, pursuant to 15 U.S.C. § 1118.

**COUNT II**
**False Designation of Origin**
**Pursuant to 15 U.S.C. § 1125(a)**

52.     Plaintiff restates and incorporates by reference the allegations continued in paragraphs 1 through 51 as if fully stated herein.

53.     Defendant has used Plaintiff's LIVE Marks without authorization in connection with the advertising of Defendant's musical performances.

54.     The services that Defendant is promoting with the LIVE Marks are identical or related to Plaintiff's goods and services offered under those marks.

10

55.    Plaintiff has no control over the quality of the services that Defendant provides in connection with the Plaintiff's LIVE Marks. As a consequence, the favorable goodwill that Plaintiff has developed in its valuable LIVE Marks is at risk as a result of Defendant's use of the LIVE Marks.

56.    Defendant advertise his services to the same consumers and sells his services through the same channels of trade as Plaintiff.

57.    Defendant's actions constitute false designation of origin which are likely to cause confusion, mistake or deception among consumers as to Defendant's musical performances' supposed affiliation, connection or association with Plaintiff, and to give the false or misleading impression as to the origin, sponsorship or approval of Defendant's musical performances, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

58.    Defendant's violations of Section 43(a) of the Lanham Act have been and are knowing, willful, intentional and deliberate.

59.    Unless enjoined by the Court, Defendant will continue to violate Plaintiff's rights and to cause confusion, mistake and deception, thereby causing immediate and irreparable injury to Plaintiff.

60.    Plaintiff has no adequate remedy at law.

61.    Plaintiff is entitled to an injunction restraining Defendant, his agents and employees, and all persons acting in concert with any one or more of them, from engaging in any of the foregoing acts pursuant to Section 34 of the Act, 15 U.S.C. § 1116.

62.    Plaintiff has suffered damages as a proximate result of Defendant's infringing acts and is entitled to recover Defendant's profits attributable to his acts of infringement, along with damages, costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

11

63.     Plaintiff is entitled to an order requiring the seizure and destruction of all infringing labels, signs, packages, advertisements, negatives or other materials that violate Plaintiff's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1115, pursuant to 15 U.S.C. § 1118.

## COUNT III
### (Federal Trademark Dilution Pursuant to Trademark Dilution Revision Act of 2006 15 U.S.C. 1125(c)) Dilution by Tarnishment

64.     Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 63 above as if fully stated herein.

65.     As a result of among other things, Plaintiff's continuous and substantial use, and extensive advertising, promotion and publicity of Plaintiff's LIVE Marks, such Marks have become distinctive and famous, long prior to the unlawful acts of Defendant complained of herein.

66.     Defendant's unauthorized use of Plaintiff's LIVE Marks have or threaten to tarnish Plaintiff's LIVE Marks.

67.     Defendant's violations of Section 43(c) of the Lanham Act have been and are knowing, willful, intentional and deliberate.

68.     Defendant's acts of trademark dilution as set forth above, have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable injury and damage to Plaintiff.

69.     Defendant will continue such acts unless enjoined by this Court.

70.     Plaintiff is entitled to an injunction restraining Defendant, his agents and employees, and all persons acting in concert with any one or more of them, from engaging in any of the foregoing acts pursuant to Section 34 of the Act, 15 U.S.C. § 1116.

12

71.     Plaintiff has suffered damages as a proximate result of Defendant's infringing acts and is entitled to recover Defendant's profits attributable to his acts of infringement, along with damages, costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

72.     Plaintiff is entitled to an order requiring the seizure and destruction of all infringing labels, signs, packages, advertisements, negatives or other materials that violate Plaintiff's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1115, pursuant to 15 U.S.C. § 1118.

<u>COUNT IV</u>
**(Federal Trademark Dilution Pursuant to**
**Trademark Dilution Revision Act of 2006**
**15 U.S.C. § 1125(c))**
<u>**Dilution by Blurring**</u>

73.     Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 72 above as if fully stated herein.

74.     This claim is for trademark dilution under 15 U.S.C. § 1125(c).

75.     As a result of among other things, Plaintiff's continuous and substantial use, and extensive advertising, promotion and publicity of Plaintiff's LIVE Marks, such Marks have become distinctive and famous, long prior to the unlawful acts of Defendant complained of herein.

76.     Defendant's unauthorized use of the Plaintiff's LIVE Marks in connection with Defendant's musical performances has blurred the distinctive quality of the Plaintiff's LIVE Marks, and will continue to blur and impair the distinctive quality of Plaintiff's LIVE Marks.

77.     Defendant's violations of Section 43(c) of the Lanham Act have been and are knowing, willful, intentional and deliberate.

4732459.2/42993-00001

78.    Defendant's acts of trademark dilution as set forth above, have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable injury and damage to Plaintiff.

79.    Defendant will continue such acts unless enjoined by this Court.

80.    Plaintiff is entitled to an injunction restraining Defendant, his agents and employees, and all persons acting in concert with any one or more of them, from engaging in any of the foregoing acts pursuant to Section 34 of the Act, 15 U.S.C. § 1116.

81.    Plaintiff has suffered damages as a proximate result of Defendant's infringing acts and is entitled to recover Defendant's profits attributable to his acts of infringement, along with damages, costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

82.    Plaintiff is entitled to an order requiring the seizure and destruction of all infringing labels, signs, packages, advertisements, negatives or other materials that violate Plaintiff's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1115, pursuant to 15 U.S.C. § 1118.

## COUNT V
### (State Trademark Dilution
### Pursuant to N.Y. General Business Law § 360-*l*)

83.    Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 82 above as if fully stated herein.

84.    As a result of among other things, Plaintiff's continuous and substantial use, and extensive advertising, promotion and publicity of Plaintiff's LIVE Marks, such Marks have become distinctive and famous, long prior to the unlawful acts of Defendant complained of herein.

85.    Defendant's unauthorized use of the LIVE Marks in connection with Defendant's musical performances has blurred the distinctive quality of the LIVE Marks and has tarnished the

reputation of the LIVE Marks, and will continue to blur, tarnish and impair the distinctive quality of Plaintiff's LIVE Marks and injure Plaintiff's goodwill and business reputation.

86.     Defendant's acts of trademark dilution as set forth above, have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable injury and damage to Plaintiff.  Defendant will continue such acts unless enjoined by this Court.

87.     Plaintiff has no adequate remedy at law.

88.     Plaintiff is entitled to an injunction restraining Defendant, his agents and employees, and all persons acting in concert with any one or more of them, from engaging in any of the foregoing acts or any further or different acts in violation of New York General Business Law § 360-*l*.

**WHEREFORE**, Plaintiff prays that the Court grant it relief as follows:

1.     That Defendant, his respective agents, servants, employees, officers, directors, successors and assigns, and all those in active concert or participation with him, be permanently enjoined from:

(a)     using in any form or manner the name or mark LIVE; or any other name, trade name, trademark or service mark consisting, in whole or in part, of the term LIVE, or any confusingly similar name, trade name, trademark, or service mark, on or in connection with any musical performance, group or stage show or filming or recording thereof;

(b)     expressly or impliedly representing himself or his goods or services as being affiliated in any manner with Plaintiff or as authorized, sponsored, or endorsed by or otherwise connected with Plaintiff;

4732459.2/ 42993-00001

(c)     engaging in any conduct which will cause or is likely to cause confusion, mistake or misunderstanding as to the source, affiliation, connection, or association of Defendant or his products or services with Plaintiff or its products or services;

(d)     otherwise infringing upon the trademark rights of Plaintiff or unfairly competing with Plaintiff in any manner whatsoever.

2.     That the Court enter an order requiring Defendant to engage in corrective advertising to dispel any confusion that may have been created by Defendant's use of the trademark LIVE.

3.     That the Court find that Defendant's acts complained of herein were done willfully and with knowledge of Plaintiff's rights and award Plaintiff compensatory damages, treble damages, prejudgment interest, postjudgment interest, costs, and attorneys' fees.

4.     That the Court award Plaintiff the maximum statutory damages of $2,000,000 pursuant to 15 U.S.C. § 1117(c).

5.     That the Court award Plaintiff such other relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all claims so triable.

DATED: New York, New York
July 17, 2012

MITCHELL SILBERBERG & KNUPP LLP

By: _Christine Lepera_

Christine Lepera
*ctl@msk.com*
Jeffrey M. Movit
*jmm@msk.com*
12 East 49th Street, 30th Floor
New York, New York 10017-1028
Telephone: (212) 509-3900
Facsimile: (212) 509-7239
*Attorneys for Plaintiff*

16

4732459.2 / 42993-00001